NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 22-7163

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

DISTRICT OF COLUMBIA,
*Plaintiff-Appellee*,

v.

EXXON MOBIL CORP., EXXONMOBIL OIL CORPORATION, ROYAL
DUTCH SHELL PLC, SHELL OIL COMPANY, BP P.L.C., BP AMERICA INC.,
CHEVRON CORPORATION, CHEVRON U.S.A. INC.,
*Defendants-Appellants*.

On Appeal from the United States District Court for the District of Columbia
No. 20-cv-01932 (Hon. Timothy J. Kelly)

**BRIEF OF AMICUS CURIAE
THE CHAMBER OF COMMERCE OF THE UNITED STATES OF
AMERICA IN SUPPORT OF APPELLANTS**

Andrew R. Varcoe
Stephanie A. Maloney
U.S. CHAMBER LITIGATION CENTER
1615 H Street, N.W.
Washington, D.C. 20062
(202) 463-5337

William M. Jay
Andrew Kim
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, D.C. 20036
(202) 346-4000
*wjay@goodwinlaw.com*

Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210

*Counsel for Amicus Curiae
the Chamber of Commerce of the
United States of America*

March 8, 2023

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to Circuit Rule 28, amicus curiae the Chamber of Commerce of the United States of America, through its undersigned counsel, certifies as follows:

**(A) Parties and amici.**  Except for amicus curiae the Chamber of Commerce of the United States of America, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Appellants.

**(B) Rulings under review.**  References to the rulings at issue appear in the Brief for Appellants.

**(C) Related cases.**  The following cases are related to this appeal within the meaning of Circuit Rule 28(a)(1)(C):

*Connecticut v. Exxon Mobil Corp.*, No. 21-1446 (2d Cir.)

*Anne Arundel County v. BP p.l.c., et al.*, No. 22-2082 (4th Cir.)

*City of Annapolis v. BP p.l.c., et al.*, No. 22-2101 (4th Cir.)

*Minnesota v. American Petroleum Institute, et al.*, No. 21-1752 (8th Cir.)

*City of Oakland, et al. v. BP p.l.c., et al.*, No. 22-16810 (9th Cir.)

*City & County of San Francisco, et al. v. BP p.l.c., et al.*, No. 22-16812 (9th Cir.)

The following related cases are pending at the United States Supreme Court:

*Suncor Energy (U.S.A.) Inc., et al. v. Board of County Commissioners of Boulder County, et al.*, No. 21-1550

*B.P. p.l.c., et al. v. Mayor & City Council of Baltimore*, No. 22-361

*Chevron Corp., et al. v. San Mateo County, et al.*, No. 22-495

*Sunoco, LP, et al. v. City & County of Honolulu*, No. 22-523

*Shell Oil Products Co., L.L.C., et al. v. Rhode Island*, No. 22-524

*City of Hoboken v. Exxon Mobil Corp., et al.*, No. 22-821

Dated: March 8, 2023
        s/ William M. Jay
        William M. Jay
        GOODWIN PROCTER LLP
        1900 N Street, N.W.
        Washington, D.C. 20036
        (202) 346-4000
        *wjay@goodwinlaw.com*

        *Counsel for Amicus Curiae*
        *the Chamber of Commerce of the*
        *United States of America*

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, amicus curiae the Chamber of Commerce of the United States of America ("Chamber") makes the following disclosures: The Chamber states that it is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

# TABLE OF CONTENTS

INTEREST OF THE AMICUS CURIAE ...................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................2

ARGUMENT ..................................................................................4

I.    Federal common law applies to the District's claims......................................4

    A.    Transboundary pollution and global warming are governed by federal common law. .............................................................5

    B.    The District's purportedly non-federal claims would significantly conflict with uniquely federal interests. ................................................9

    C.    Whether the relevant federal common law has been displaced is irrelevant to the jurisdictional question before this Court..................12

II.   The well-pleaded complaint rule does not allow courts to ignore the inherently federal basis of a claim. ..................................................14

    A.    The District cannot defeat federal jurisdiction by artful pleading. .....14

    B.    Removal of federal common law claims, however they are labeled, is wholly consistent with the policies underlying the well-pleaded complaint rule. ..................................................................20

CONCLUSION ...............................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Am. Elec. Power Co. v. Connecticut (AEP)*,
    564 U.S. 410 (2011)....................................................7, 12, 13, 19, 23

*ARCO Env't Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*,
    213 F.3d 1108 (9th Cir. 2000) ...........................................................15

*Banco Nacional de Cuba v. Sabbatino*,
    376 U.S. 398 (1964)............................................................................6

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
    25 F.4th 1238 (10th Cir. 2022) ...........................................................18

*Beneficial Nat'l Bank v. Anderson*,
    539 U.S. 7 (2003)..........................................................................19, 20

*Berera v. Mesa Med. Group, PLLC*,
    779 F.3d 352 (6th Cir. 2015) .............................................................17

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987)......................................................................14, 20

*City of Hoboken v. Chevron Corp.*,
    45 F.4th 699 (3d Cir. 2022) ..........................................................16, 18

*City of Milwaukee v. Illinois (Milwaukee II)*,
    451 U.S. 304 (1981)............................................................6, 13, 14, 21

*\*City of N.Y. v. Chevron Corp.*,
    993 F.3d 81 (2d Cir. 2021) ......................... 4, 8, 9, 10, 11, 12, 21, 22

\*Authorities upon which we chiefly rely are marked with asterisks.

v

*Cnty. of Oneida v. Oneida Indian Nation of N.Y. (Oneida II)*,
　　470 U.S. 226 (1985)...................................................................6, 13, 20

*Delaware v. Pennsylvania*,
　　598 U.S. __, slip op. (Feb. 28, 2023)..........................................6, 19

*Erie R.R. Co. v. Tompkins*,
　　304 U.S. 64 (1938)........................................................................5, 19

*Federated Dep't Stores, Inc. v. Moitie*,
　　452 U.S. 394 (1981).....................................................................15, 18

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*,
　　463 U.S. 1 (1983).........................................................................14, 17

*Fry v. Napoleon Cmty. Schs.*,
　　137 S. Ct. 743 (2017)...................................................................15, 16

*Grynberg Prod. Corp. v. British Gas, p.l.c.*,
　　817 F. Supp. 1338 (E.D. Tex. 1993)................................................21

*Hinderlider v. La Plata River & Cherry Creek Ditch Co.*,
　　304 U.S. 92 (1938)........................................................................5, 6, 7

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
　　535 U.S. 826 (2002).................................................................20, 21, 22

*\*Illinois v. City of Milwaukee (Milwaukee I)*,
　　406 U.S. 91 (1972).......................................4, 5, 6, 7, 8, 9, 14, 19, 23

*Illinois v. Outboard Marine Corp.*,
　　680 F.2d 473 (7th Cir. 1982) ...........................................................13

*Int'l Paper Co. v. Ouellette*,
　　479 U.S. 481 (1987).............................................................................21

*Kansas v. Colorado*,
　　206 U.S. 46 (1907)................................................................................6

*Massachusetts v. Exxon Mobil Corp.*,
　　462 F. Supp. 3d 31 (D. Mass. 2020).................................................20

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  31 F.4th 178 (4th Cir. 2022) ..............................................................12

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*,
  471 U.S. 845 (1985)............................................................................8

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
  696 F.3d 849 (9th Cir. 2012) ........................................................8, 13

*O'Melveny & Myers v. FDIC*,
  512 U.S. 79 (1994)...............................................................................9

*OBB Personenverkehr AG v. Sachs*,
  577 U.S. 27 (2015)..............................................................................15

*Old Dominion Elec. Coop. v. PJM Interconnection, LLC*,
  24 F.4th 271 (4th Cir. 2022) .............................................................15

*Oneida Indian Nation of N.Y. v. Cnty. of Oneida (Oneida I)*,
  414 U.S. 661 (1974)...............................................................13, 19, 20

*Provincial Gov't of Marinduque v. Placer Dome, Inc.*,
  582 F.3d 1083 (9th Cir. 2009) .............................................................6

*Rivet v. Regions Bank of La.*,
  522 U.S. 470 (1998)............................................................................17

*Rodriguez v. FDIC*,
  140 S. Ct. 713 (2020).......................................................................5, 22

*Sam L. Majors Jewelers v. ABX, Inc.*,
  117 F.3d 922 (5th Cir. 1997) ............................................................5, 6

*Sola Elec. Co. v. Jefferson Elec. Co.*,
  317 U.S. 173 (1942).............................................................................6

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981)............................................5, 7, 8, 16, 22, 23

*Travelers Indem. Co. v. Sarkisian*,
  794 F.2d 754 (2d Cir. 1986) ..............................................................15

*Treiber & Straub, Inc. v. UPS, Inc.*,
    474 F.3d 379 (7th Cir. 2007) ...............................................................6

*Ungaro-Benages v. Dresdner Bank AG*,
    379 F.3d 1227 (11th Cir. 2004) .........................................................6

*United States v. Honeywell Int'l Inc.*,
    47 F.4th 805 (D.C. Cir. 2022)...........................................................5

*Wallis v. Pan American Petroleum Corp.*,
    384 U.S. 63 (1966).............................................................................9

*Wayne v. DHL Worldwide Express*,
    294 F.3d 1179 (9th Cir. 2002) .........................................................17

*Wheeldin v. Wheeler*,
    373 U.S. 647 (1963)..........................................................................22

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)...........................................................................7

**Statutes:**

28 U.S.C. § 1331 ....................................................................................19

**Other Authorities:**

Richard H. Fallon, Jr. et al., Hart and Wechsler's The Federal Courts
    and the Federal System (7th ed. 2015) .............................................19

Henry J. Friendly, *In Praise of Erie — and of the New Federal
    Common Law*, 39 N.Y.U. L. Rev. 383 (1964)....................................19

15A Moore's Federal Practice § 107.73 & n.4 (Dec. 2022 update) .......17

Press Release, Sen. Sheldon Whitehouse, *New Bipartisan, Bicameral
    Proposal Targets Industrial Emissions for Reduction* (July 25,
    2019), https://tinyurl.com/y49xfg3a ...................................................1

U.S. Chamber of Commerce, Our Approach to Climate Change,
    https://www.uschamber.com/climate-change-position .......................2

14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3722.1 (4th ed.) .......15

19 Wright & Miller, Fed. Prac. & Proc. Juris. § 4514 (4th ed. 2022) ...................... 7

## INTEREST OF THE AMICUS CURIAE[1]

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber often files amicus curiae briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber has a strong interest in legal and policy issues relating to climate change. The global climate is changing, and human activities contribute to these changes. There is much common ground on which all sides could come together to address climate change with policies that are practical, flexible, predictable, and durable. The Chamber believes that durable climate policy must be made by Congress, which should both encourage innovation and investment to ensure significant emissions reductions and avoid economic harm for businesses, consumers, and disadvantaged communities. *See, e.g.*, Press Release, Sen. Sheldon

---

[1] All parties have consented to the filing of this brief. No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

Whitehouse, *New Bipartisan, Bicameral Proposal Targets Industrial Emissions for Reduction* (July 25, 2019), https://tinyurl.com/y49xfg3a (reporting the Chamber's support for the bipartisan Clean Industrial Technology Act). U.S. climate policy should recognize the urgent need for action, while maintaining the national and international competitiveness of U.S. industry and ensuring consistency with free enterprise and free trade principles. *See* U.S. Chamber of Commerce, Our Approach to Climate Change, https://www.uschamber.com/climate-change-position. Governmental policies aimed at achieving these goals should not be made by the courts, much less by a patchwork of actions under state common law.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The District of Columbia's claims regarding the harm arising from the effects of global climate change are exactly the sort of interstate and international claims that require the application of federal common law. The District may assert a localized harm, but the alleged cause of that harm is anything but local—an inherently global phenomenon that is caused by parties and activities not only in every state in the United States, but in every country on the planet. Claims seeking to impose liability for such cross-border harms are inherently federal and belong in federal court. This is so even if the District's claims purportedly relate to the marketing and sale of fossil fuels, rather than the emissions themselves. As pleaded in this complaint, the harms caused by the marketing and sale of fossil fuels and the

harms of global warming are not meaningfully distinct; and in any event, the Defendants' alleged marketing practices relating to the sale of fossil fuels are also the kind of cross-border activity that is governed solely by federal common law.

The well-pleaded complaint rule makes a plaintiff the master of its complaint, but the rule does not let plaintiffs escape the jurisdictional consequences of the claims they choose to assert. Federal claims are removable to federal court, and that rule holds true even if the plaintiff fails to acknowledge—or tries to obscure—the federal nature of its claims. Where the distinctly federal nature of a claim is apparent from the plaintiff's allegations—such as allegations that present a cross-border claim for contributions to global climate change, which can arise only under federal common law—the plaintiff's artful refusal to attach the label "federal common law" to its claims does not matter. If the gravamen of the complaint reveals that the claim can only be federal, then it arises under federal law.

Treating inherently federal claims as federal is entirely consistent with the well-pleaded complaint rule. That rule respects a plaintiff's deliberate choice to present a state-law claim in state court, but there is no such choice available where there is *no* state-law claim. In the narrow, discrete, and easily identifiable subset of areas where federal common law governs, a state common law cause of action cannot exist.

# ARGUMENT

## I.    Federal common law applies to the District's claims.

The claims in the District's complaint arise under federal common law because they implicate uniquely federal interests and demand a uniform standard. For these reasons, the Supreme Court has long applied federal common law to cases involving transboundary pollution—and similar considerations require the application of federal common law in this case. *See, e.g.*, *City of N.Y. v. Chevron Corp.*, 993 F.3d 81, 91-92 (2d Cir. 2021) (explaining that federal common law, not state law, governed city's claims rooted in global warming due to "the 'overriding ... need for a uniform rule of decision' on matters influencing national energy and environmental policy" and "basic interests of federalism" (ellipsis in original) (quoting *Illinois v. City of Milwaukee (Milwaukee I)*, 406 U.S. 91, 105 n.6 (1972))).

The district court erroneously believed that federal common law does not apply here for two reasons. First, it saw no significant conflict between the relevant federal interests and the District's claims. But in this inherently interstate area, the conflict arises from the use of state or District law at all, leading to a regulatory jumble that unmistakably and significantly conflicts with federal interests. Second, the court believed that any federal common law has been displaced by the Clean Air Act and, therefore, cannot support jurisdiction. This reasoning confuses the jurisdictional question—whether any cause of action must be federal—with the

4

distinct question whether federal law provides a remedy. Displacement is irrelevant to the jurisdictional question before this Court.

### A.    Transboundary pollution and global warming are governed by federal common law.

"There is no federal *general* common law," *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (emphasis added), but federal courts may "fashion federal law" in limited areas "where federal rights are concerned." *Milwaukee I*, 406 U.S. at 103 (citation omitted). *Erie* does not undermine this principle. Indeed, on "the same day *Erie* was decided, the Supreme Court released an opinion in which Justice Brandeis, the author of *Erie*, relied upon federal common law to resolve a case"—a cross-border dispute. *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 927 n.8 (5th Cir. 1997) (citing *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92 (1938)).

Courts typically apply federal common law in cases presenting one (or more) of three characteristics. First, federal common law applies in cases where "common lawmaking" is "'necessary to protect uniquely federal interests.'" *Rodriguez v. FDIC*, 140 S. Ct. 713, 717 (2020) (quoting *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981)); *see United States v. Honeywell Int'l Inc.*, 47 F.4th 805, 815 (D.C. Cir. 2022). Second, federal common law is used in "those areas of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by

5

federal law having its source in those statutes, rather than by local law." *Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 173, 173-74 (1942). Finally, courts fashion federal common law "[w]hen Congress has not spoken to a particular issue," *City of Milwaukee v. Illinois (Milwaukee II)*, 451 U.S. 304, 313 (1981), and federal policy calls for a "uniform standard," *Milwaukee I*, 406 U.S. at 107 n.9 (citation omitted).

Several types of cross-border disputes—particularly those that implicate the interests of more than one State or sovereign—present "uniquely federal interests" that require the application of a federal common law because state law cannot govern. Courts have applied federal common law in cases involving interstate water disputes,[2] tribal land rights,[3] interstate air carrier liability,[4] interstate disputes over intangible property,[5] and foreign relations.[6] In such cases, federal common law is necessary because "local law will not be sufficiently sensitive to federal concerns, it is not likely to be uniform across state lines, and it will develop at various rates of

---

[2] *Hinderlider*, 304 U.S. at 110; *Kansas v. Colorado*, 206 U.S. 46, 95 (1907).

[3] *Cnty. of Oneida v. Oneida Indian Nation of N.Y. (Oneida II)*, 470 U.S. 226, 235-36 (1985).

[4] *Treiber & Straub, Inc. v. UPS, Inc.*, 474 F.3d 379, 384 (7th Cir. 2007) (discussing the Fifth Circuit's "extensive analysis of the history of federal common law liability of common carriers" in *Sam L. Majors*, 117 F.3d at 922).

[5] *See Delaware v. Pennsylvania*, 598 U.S. __, slip op. 3-5 (Feb. 28, 2023) (No. 145, Orig.) (discussing federal common law rules for escheatment of money orders).

[6] *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 427 (1964); *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1088 (9th Cir. 2009); *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1233 (11th Cir. 2004).

speed in different states." 19 Wright & Miller, Fed. Prac. & Proc. Juris. § 4514 (4th ed. 2022). Moreover, the governmental structure created by the Constitution does not allow States to engage in such cross-border regulation. *Tex. Indus.*, 451 U.S. at 641 ("In these instances, our federal system does not permit the controversy to be resolved under state law…."); *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980) (the "sovereignty of each state … implie[s] a limitation on the sovereignty of its sister States").

Cases about global emissions, like this one, squarely give rise to the concerns that necessitate federal common law. Accordingly, "[w]hen we deal with air and water in their ambient or interstate aspects, there is a federal common law." *Milwaukee I*, 406 U.S. at 103; *accord Am. Elec. Power Co. v. Connecticut (AEP)*, 564 U.S. 410, 421 (2011); *see also Hinderlider*, 304 U.S. at 110 (apportionment of interstate stream "is a question of 'federal common law'"). "Environmental protection" is, after all, "an area 'within national legislative power,'" and thus, it is appropriate for federal courts to "fill in 'statutory interstices,' and, if necessary, even 'fashion federal law.'" *AEP*, 564 U.S. at 421 (citation omitted). As the Supreme Court has recognized, allowing states to apply their own varying rules to environmental concerns crossing state lines would mean "more conflicting disputes, increasing assertions and proliferating contentions" about the standards for

adjudging claims of "improper impairment." *Milwaukee I*, 406 U.S. at 107 n.9 (citation omitted).

Because claims regarding transboundary emissions and global warming implicate "uniquely federal interests," "our federal system does not permit the controversy to be resolved under state law," as the "interstate or international nature of the controversy makes it inappropriate for state law to control." *Tex. Indus.*, 451 U.S. at 640-41 & n.13; *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 855 (9th Cir. 2012) ("[F]ederal common law can apply to transboundary pollution suits."). And where, as here, a claim falls within an area that is exclusively federal in nature, the case falls within federal jurisdiction. *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850, 852 (1985). As the Second Circuit explained, artful pleading cannot turn "a suit over global greenhouse gas emissions" into a "local spat," simply by focusing on the sliver of global environmental harm that the District ascribes to emissions arising from the Defendants' sales in the District; the alleged "global greenhouse gas emissions" are "the singular source of … harm," and thus must be adjudged by federal common law standards, not by state law. *City of New York*, 993 F.3d at 91. This case should have stayed in federal court. As explained below, neither of the reasons the district court gave is a valid basis for allowing this classic transboundary case to proceed in the local court of one discrete jurisdiction.

8

**B.     The District's purportedly non-federal claims would significantly conflict with uniquely federal interests.**

The district court assumed, without deciding, that the District's claims here implicate "three uniquely federal interests: interstate pollution, the navigable waters of the United States, and foreign affairs."  JA459 & n.2.  Nevertheless, the district court erroneously concluded that "[f]ederal common law does not apply to the District's claims" because the Defendants did not show "a 'significant conflict' between the District's claims under the [D.C. Consumer Protection Procedures] Act and a federal interest they identify."  JA459-61 (quoting *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 88 (1994)).

But the conflict here is both manifest and significant.  Recall that the relevant "conflict" is not over the *substance* of state law, but with "the use of state law" in this area at all.  *O'Melveny & Myers*, 512 U.S. at 87 (quoting *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68 (1966)).  And with respect to regulations aimed at global warming, "there is an overriding federal interest in the need for a uniform rule of decision" and "the controversy touches basic interests of federalism."  *Milwaukee I*, 406 U.S. at 105 n.6; *see City of New York*, 993 F.3d at 92 ("this case poses the quintessential example of when federal common law is most needed" because "[a]ny actions the [fuel producers] take to mitigate their liability … must undoubtedly take effect across every state (and country)").  The phenomenon of global warming requires a coordinated national (and international) response and uniform standards

across jurisdictions.  It would severely frustrate any coherent national policy, and be inconsistent with core federalism principles, to allow the District and all fifty states to impose a jumble of idiosyncratic regimes on emissions-related activities that occur all over the world.  Our federal system does not permit ceding regulatory power over a planetary challenge like global warming, and over the already highly-regulated energy industry, to the 68-square-mile District, whether alone or as part of a patchwork of 51 jurisdictions.  *See City of New York*, 993 F.3d at 93 ("[A]s states will invariably differ in their assessment of the proper balance between these national and international objectives, there is a real risk that subjecting the [defendants'] global operations to a welter of different states' laws could undermine important federal policy choices.").

It does not matter that the District brought its claims packaged as false-advertising litigation, rather than as tort claims arising directly from greenhouse-gas emissions.  Any distinction between claims of false advertising and tort is illusory here.  The Complaint, as pleaded, lumps together the "extraction, production, promotion, marketing, and sale of Defendants' fossil fuel products"—placing all of these activities in a single bucket of conduct that works "to the detriment of DC consumers and the public generally."  JA80 (Compl. ¶ 2).  Indeed, the Complaint specifically alleges that the Defendants violated the D.C. consumer protection statute in connection with the "sale of fossil fuel products," JA147, JA150, JA152, JA154

(Compl. ¶¶ 174, 181, 188, 195)—the same conduct which enables the products' use and thereby generates emissions. Faced with a similar complaint that "limit[ed] itself to the 'earlier moment of production and sale of fossil fuels,'" rather than "claims over emissions" themselves, the Second Circuit rejected this distinction as "merely artful pleading" that "does not change the substance of [New York City's] claims." *City of New York*, 993 F.3d at 97. This Court should do the same.

Moreover, the advertising complained of here is hardly cabined to the District. The clear brunt of the Complaint's allegations of false and misleading statements (or omissions) centers on advertising campaigns in the national and international press, on social media and online platforms, and on the Defendants' own websites—reaching consumers in the District only incidentally. *See, e.g.*, JA126 (Compl. ¶ 110) ("Exxon is currently running a series of full-page advertisements in print editions and posts in the electronic edition of the *New York Times*, and in other publications with wide circulation to DC consumers, such as *The Economist*, as well as on Exxon's YouTube channel…."); JA127 (Compl. ¶ 116) ("…Exxon has promoted dozens of multimedia advertisements on platforms such as Instagram, Twitter, Facebook, and LinkedIn, where Exxon has millions of social media followers…."); JA135 (Compl. ¶ 139) (discussing Chevron's "print, internet, and television ad campaign" running "across the United States and internationally"); JA142-44 (Compl. ¶¶ 157-160) (quoting the Defendants' websites). Occasionally,

the Complaint refers to particular advertisements described as "targeted at DC consumers," such as "billboards in District metropolitan area airports." JA131 (Compl.¶ 127). But the Complaint situates these advertisements as mere adjuncts to the national and international advertising campaigns "on Twitter, on CNN, in Politico, and in *The Economist*." *Id.*

Simply put, the District's allegations are "sprawling" in the same way that New York City's were—and are therefore "beyond the limits of state law." *City of New York*, 993 F.3d at 92.

### C. Whether the relevant federal common law has been displaced is irrelevant to the jurisdictional question before this Court.

The district court also reasoned that federal common law cannot govern the District's claims here because the Supreme Court held in *AEP* that "the Clean Air Act and the EPA actions it authorizes displace any federal common-law right to seek abatement of carbon-dioxide emissions from fossil-fuel fired powerplants." 564 U.S. at 424; *see* JA460 n.3. On this basis, the district court asserted that "it is unclear how the District's claims could arise under federal common law in this area if those 'federal law claim[s] [have] been deemed displaced, extinguished, and rendered null by the Supreme Court.'" JA460 n.3 (quoting *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 206 (4th Cir. 2022), *petition for cert. pending*, No. 22-361 (U.S. filed Oct. 14, 2022)).

But the district court's analysis (and that of the Fourth Circuit decision on which it relies) incorrectly treats displacement as an issue of subject-matter jurisdiction, not remedies. In *AEP*, the Supreme Court explained that the scope of the displacement was to be determined by the "reach of remedial provisions" available in the displacing statute. 564 U.S. at 425 (citing *Oneida II*, 470 U.S. at 237-39); *see also Milwaukee II*, 451 U.S. at 332 (observing that Congress's changes to the Clean Water Act meant that "no federal common-law remedy was available"); *Illinois v. Outboard Marine Corp.*, 680 F.2d 473, 476 (7th Cir. 1982) (statutory displacement of "the federal common law remedy for nuisances resulting from discharges of pollutants"). The Ninth Circuit's decision in *Kivalina* appropriately conceptualizes statutory displacement under *AEP* as the displacement of causes of action or remedies, not of federal jurisdiction. 696 F.3d at 856 (displacement means that federal common law "does not provide a remedy"); *id.* at 857 ("displacement of a federal common law right of action means displacement of remedies"). The absence of a viable remedy (due to displacement by federal statute) is a reason why the federal common law claim "may fail at a later stage," but the federal claim remains cognizable "for jurisdictional purposes." *Oneida Indian Nation of N.Y. v. Cnty. of Oneida (Oneida I)*, 414 U.S. 661, 675 (1974).

When a state-law claim is impermissible because of the federal nature of the interests at stake, and federal common law is displaced by a federal statute, the case

13

continues to arise under federal law and establish federal jurisdiction. This follows from the basic "rationale of the 1875 grant of federal question jurisdiction—to insure the availability of a forum designed to minimize the danger of hostility toward, and specially suited to the vindication of, federally created rights." *Milwaukee I*, 406 U.S. at 100 (citation omitted). The fact that federal common law may not at present provide a remedy does not make the interests at stake any less federal; it means only that Congress has exercised its right to make rules for an exclusively federal area, and has elected not to create a remedy in that space. Put differently, the displacement inquiry is confined to deciding "whether federal statutory or federal common law governs" a particular claim. *Milwaukee II*, 451 U.S. at 316-17. The claim is federal either way, and it therefore presents a federal question for jurisdictional purposes.

## II.   The well-pleaded complaint rule does not allow courts to ignore the inherently federal basis of a claim.

### A.   The District cannot defeat federal jurisdiction by artful pleading.

Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). But an "independent corollary" of the rule is that "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint," *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 22 (1983) (citation omitted). In other words, a "plaintiff may not defeat removal by clothing a federal claim in

state garb, or, as it is said, by use of 'artful pleading.'" *Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 279 (4th Cir. 2022) (affirming removal based on artfully pled unfair trade practices claim under state law) (quoting *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir. 1986)).  While a plaintiff can choose to bring a state-law claim in state court, removal is appropriate when the plaintiff attempts to "disguise [an] inherently federal cause of action."  14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3722.1 (4th ed.); *see ARCO Env't Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000) (explaining that a "state-created cause of action can be deemed to arise under federal law … where the claim is necessarily federal in character"); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) (discussing claims that "had a sufficient federal character to support removal").

In other jurisdictional contexts, courts look to the "gravamen" of the complaint, not just to the label the plaintiff attaches, to determine whether the complaint invokes federal jurisdiction. *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 36 (2015) (looking not just at how the plaintiff "recast[s]" her negligence claims, but instead at the "'essentials' of her suit," to determine whether jurisdiction existed under the Foreign Sovereign Immunities Act (citation omitted)); *see also Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 755 (2017) (holding that courts must look to the "gravamen" of the plaintiff's complaint and "set[] aside any attempts at artful

pleading" to determine whether the plaintiff's claim requires exhaustion under federal law). What matters is "substance, not surface": "[t]he use (or non-use) of particular labels and terms is not what matters." *Fry*, 137 S. Ct. at 755. Focusing on the "gravamen" of a complaint, rather than whether a plaintiff used or avoided the right "magic words," ensures that a plaintiff cannot manipulate federal jurisdiction "through artful pleading." *Id.* (citation omitted).

The rule is no different in the narrow but important circumstances where a claim is inherently federal; in those situations, casting the claim in different language does not make it arise under different law. Where, as here, "especial federal concern[s]" are implicated, the *only* claim that can be pleaded is a federal one, because federal common law governs when the nature of the claim "makes it inappropriate for state law to control." *Tex. Indus.*, 451 U.S. at 641 & n.13. That claim can be governed only by the laws of the United States and thus is properly brought in federal court.

The district court erroneously thought that the Defendants' argument for jurisdiction on the basis of federal common law amounts to an argument for a "new form of complete preemption." JA462 (quoting *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 707 (3d Cir. 2022), *petition for cert. pending*, No. 22-821 (U.S. filed Feb. 27, 2023)). As articulated by the Supreme Court, the complete preemption doctrine applies where a federal cause of action has such "powerful" preemptive

16

force "as to displace entirely any state cause of action" that "comes within the scope of the federal cause of action," and therefore the claim "necessarily 'arises under' federal law." *Franchise Tax Bd.*, 463 U.S. at 23-24.

But "artful pleading" and "complete preemption" are conceptually distinct exceptions to the well-pleaded complaint rule. *See, e.g.*, *Berera v. Mesa Med. Group, PLLC*, 779 F.3d 352, 360 (6th Cir. 2015) (artful pleading and complete preemption "are separate exceptions to the well-pleaded complaint rule"); *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002) (discussing "three theories" that can support removal jurisdiction when complaint pleads only state-law claims: "1) complete preemption; 2) federal common law; or 3) the complaint raises an express or implied cause of action" under federal law); 15A Moore's Federal Practice § 107.73 & n.4 (Dec. 2022 update) (explaining that the artful pleading and complete preemption doctrines are "separate and distinct"; collecting cases). "The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim," *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998), but that is not all that it does.[7]  Complete preemption is not the only circumstance where claims have a "sufficient federal character to support removal."

---

[7] That is clear from *Rivet* itself, in which the Supreme Court reiterated *Franchise Tax Board*'s statement that "a plaintiff may not defeat removal by omitting to plead necessary federal questions," and then used complete preemption as one example. 522 U.S. at 475.  *Rivet* involved only an ordinary federal defense (preclusion).

*Moitie*, 452 U.S. at 397 n.2. Claims that must necessarily arise under federal common law due to their interstate and transboundary character constitute another such circumstance.

Even if it were necessary here to apply complete preemption rather than artful pleading, the district court was incorrect in insisting that federal common law cannot give rise to complete preemption. *See* JA462. The district court cited decisions of the Third and Tenth Circuits in concluding that only federal *statutes* may completely preempt state causes of action. *See City of Hoboken*, 45 F.4th at 707; *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1262 (10th Cir. 2022) (holding that "the federal common law for transboundary pollution cannot completely preempt" state-law claims because "complete preemption requires congressional intent," and "federal common law is created by the judiciary—not Congress"), *petition for cert. pending*, No. 21-1550 (U.S. filed June 8, 2022). These decisions are mistaken.

None of these decisions offered any reason why the doctrine of complete preemption would be limited to statutes. Nor is there a principled basis for such a limitation. There is little sense in holding that a federal rule enacted in a statute may completely preempt a state cause of action, but an identical federal rule grounded directly in the Constitution or crafted by the Supreme Court as a matter of federal common law may not. This is particularly true because, at bottom, the distinction

18

between a federal rule grounded in "common law" and one that is statutory or constitutional is not one of jurisdictional significance, since federal common law must be "traceable to some identifiable constitutional or statutory source." Richard H. Fallon, Jr. et al., Hart and Wechsler's The Federal Courts and the Federal System 649 (7th ed. 2015). After *Erie*, the so-called "new" federal common law exists only "'where Congress has so directed' or where the basic scheme of the Constitution so demands." *AEP*, 564 U.S. at 421 (quoting Henry J. Friendly, *In Praise of Erie — and of the New Federal Common Law*, 39 N.Y.U. L. Rev. 383, 408, 421-22 (1964)). In some areas, Congress has displaced federal common law in part but retained it in part, and the boundary is not perfectly clear. *See, e.g.*, *Delaware*, slip op. 8-9. And federal common law has always been treated as being within the "laws" referred to in the jurisdictional statute for cases arising under the "Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see, e.g.*, *Oneida I*, 414 U.S. at 666-67, 674; *Milwaukee I*, 406 U.S. at 100.

Given these statutory or constitutional sources of federal common law, there is no reason to rule out the possibility that some federal common law rule could have "the unusually 'powerful' pre-emptive force" that triggers complete preemption. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 7 (2003). As one court has explained (even while incorrectly remanding one of these cases), "[j]ust as a congressional policy may sometimes require the federal cause of action to be exclusive and thus

19

completely preempt state law, so too the 'basic scheme of the Constitution' may sometimes require an exclusively federal cause of action." *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 41 n.8 (D. Mass. 2020).[8]  Nothing supports a categorical distinction between federal common law and statutory law with respect to complete preemption.

### B.    Removal of federal common law claims, however they are labeled, is wholly consistent with the policies underlying the well-pleaded complaint rule.

Three "longstanding policies" justify the ordinary application of the well-pleaded complaint rule:  (1) respect for the plaintiff's deliberate choice to "eschew[] claims based on federal law, . . . to have the cause heard in state court"; (2) avoiding the radical expansion of "the class of removable cases, contrary to the '[d]ue regard for the rightful independence of state governments'"; and (3) preventing the "undermin[ing] [of] the clarity and ease of administration of the well-pleaded complaint doctrine, which serves as a 'quick rule of thumb' for resolving jurisdictional conflicts." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831-32 (2002) (citation omitted).  Each of those policies is completely consistent with upholding the removal of federal common law claims, including

---

[8] In fact, the Supreme Court recognized that it has applied a form of complete preemption in a federal common law context. *Beneficial Nat'l Bank*, 539 U.S. at 8 n.4 (discussing *Oneida I*, 414 U.S. at 675); *Caterpillar*, 482 U.S. at 393 n.8 (same); *see Oneida II*, 470 U.S. at 236 (explaining that tribe's cause of action was "based on federal common law").

when they are set forth in an artfully pleaded complaint that attempts to recast such claims as state-law claims.

First, a plaintiff cannot invoke the prerogative to choose the law and forum when the plaintiff alleges a common-law claim that is inherently federal; where federal common law applies, there is no state-law option to choose. One of the main purposes of the well-pleaded complaint rule is to honor the plaintiff's choice of bringing a claim "in state court under state law." *Id.* at 832. But, as explained above, where federal common law governs, the "implicit corollary" is that there is no state law to apply. *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 488 (1987); *see also Milwaukee II*, 451 U.S. at 313 n.7 ("If state law can be applied, there is no need for federal common law; if federal common law exists, it is because state law cannot be used."). That corollary is best demonstrated in cases where federal common law necessarily governs because the claim is interstate and international in nature; transboundary issues cannot be resolved by a patchwork of state courts applying local law in an uncoordinated manner. *E.g.*, *City of New York*, 993 F.3d at 85-86 ("Global warming presents a uniquely international problem of national concern. It is therefore not well-suited to the application of state law."); *Grynberg Prod. Corp. v. British Gas, p.l.c.*, 817 F. Supp. 1338, 1356 (E.D. Tex. 1993) ("International relations are not such that both the states and the federal government can be said to have an interest; the states have little interest because the problems involved [in

21

international relations] are uniquely federal." (citation and internal quotation marks omitted)).

Second, there is no risk of flooding federal courts with a new wave of removal cases premised on federal common law. *Holmes*, 535 U.S. at 832. The Supreme Court has stressed that federal common law plays "a necessarily modest role," *Rodriguez*, 140 S. Ct. at 717, and the "instances where [courts] have created federal common law are few and restricted," *Wheeldin v. Wheeler*, 373 U.S. 647, 651 (1963). *See Tex. Indus.*, 451 U.S. at 641 (federal common law exists only in "narrow areas"). And in those few areas where federal common law applies, there is little risk of intruding upon the "independence of state governments," because those areas necessarily fall outside state authority. *Holmes*, 535 U.S. at 832 (citation omitted).

Conversely, failing to recognize federal common law claims for what they are, just because the plaintiff's complaint refuses to acknowledge it, risks allowing state courts and state law to intrude upon federal priorities. As the Second Circuit has warned, attempting to apply state law in an area where federal common law should apply risks "upsetting the careful balance" of federal prerogatives. *City of New York*, 993 F.3d at 93. In a case very similar to this one that presented claims for relief based on climate change, the Supreme Court made clear that "[e]nvironmental protection" is one such area that is "undoubtedly . . . within *national* legislative power, one in which federal courts may fill in statutory interstices and, if necessary,

even fashion federal law." *AEP*, 564 U.S. at 421 (emphasis added, citation and internal quotation marks omitted); *see id.* (quoting *Milwaukee I*, 406 U.S. at 103); *id.* at 422 (noting not only that the subject of tort law claims based on climate change "is meet for federal law governance," but that "borrowing the law of a particular State would be inappropriate" for federal common law claims based on climate change).

Finally, using the artful pleading doctrine to recognize federal jurisdiction in cases presenting federal common law claims does not make the well-pleaded complaint rule any more complicated to apply. It is not difficult to identify the few discrete areas of the law that raise the sort of "especial federal concerns to which federal common law applies." *Tex. Indus.*, 451 U.S. at 641 n.13; *e.g.*, *id.* at 641 (identifying several "narrow areas" in which federal common law applies). The subject of "air and water in their ambient or interstate aspects," *AEP*, 564 U.S. at 421 (quoting *Milwaukee I*, 406 U.S. at 103), is one such category, and a claim of harm resulting from global climate change fits squarely into it.

## CONCLUSION

The district court's remand order should be vacated, and this case should be remanded for further proceedings.

23

Dated:  March 8, 2023                  Respectfully submitted,

                                       s/ William M. Jay
                                       William M. Jay
Andrew R. Varcoe                       Andrew Kim
Stephanie A. Maloney                   GOODWIN PROCTER LLP
U.S. CHAMBER LITIGATION CENTER         1900 N Street, N.W.
1615 H Street, N.W.                    Washington, D.C. 20036
Washington, D.C. 20062                 (202) 346-4000
(202) 463-5337                         *wjay@goodwinlaw.com*

                                       Jesse Lempel
                                       GOODWIN PROCTER LLP
                                       100 Northern Avenue
                                       Boston, MA 02210

                                       *Counsel for Amicus Curiae*
                                       *the Chamber of Commerce of the United*
                                       *States of America*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type volume limitations of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 5,708 words, excluding the parts exempted by Rule 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because it appears in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  March 8, 2023                    s/ William M. Jay
                                         William M. Jay
                                         GOODWIN PROCTER LLP
                                         1900 N Street, N.W.
                                         Washington, D.C. 20036
                                         (202) 346-4000
                                         *wjay@goodwinlaw.com*

                                         *Counsel for Amicus Curiae*
                                         *the Chamber of Commerce of the*
                                         *United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on March 8, 2023, and the text of the electronic brief is identical to the text of the paper copies.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: March 8, 2023

s/ William M. Jay
William M. Jay
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, D.C. 20036
(202) 346-4000
wjay@goodwinlaw.com

*Counsel for Amicus Curiae*
*Chamber of Commerce of the United*
*States of America*